FILED

2012 Jul-12  PM 03:35
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN  DIVISION

|  |  |  |
|---|---|---|
| **JERRY BIGGERSTAFF,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **5:11-cv-1510-AKK** |
| | ) | |
| **BRETT CONSTABLE, *et al.*,** | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Jerry Biggerstaff ("Plaintiff") filed this action on April 4, 2011, in

the Circuit Court of Limestone County against Officer Brett Constable[1] ("Officer

Constable"), Will Payne ("Payne"), Kevin Mulack ("Mulack"), Wal-Mart Stores,

Inc., (Wal-Mart), and the City of Athens ("the City").  Doc. 1-1.  Officer Constable

and the City removed this action to this court on May 5, 2011.  Doc. 1.  Thereafter,

Officer Constable and the City jointly filed a Motion for Summary Judgment, docs.

18 & 19, Wal-Mart and Mulack also jointly filed a Motion for Summary Judgment,

docs. 21, & 22, and Payne individually filed a Motion for Summary Judgment, doc.

---

[1]Constable's Motion for Sanctions, doc. 29, against Plaintiff for failure to respond to the court's order compelling Plaintiff to respond to Interrogatories and Request for Production, doc. 28, is **DENIED**.

1

33.[2]  All motions are fully briefed doc. 24, 25, 26, 27, & 36.  For the reasons stated below, the motions for summary judgment on the negligence claim against Payne and the assault and battery claim against Payne and Wal-Mart are **DENIED**, and **GRANTED** in all other respects.

Part I of this opinion is a discussion of the summary judgment standard.  In Part II, the court outlines the facts that form the basis for this lawsuit.  Part III is the court's analysis of the parties' respective contentions, and it is divided into two subparts.  The court analyzes Plaintiff's federal claims in subpart A, and Plaintiff's state law claims in subpart B.  Finally, Part IV is the court's conclusion.

## I.  <u>SUMMARY JUDGMENT STANDARD OF REVIEW</u>

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  To support

---

[2]Payne filed a Motion to Dismiss on January 26, 2012, alleging untimely service of process.  Doc. 14.  The court's Uniform Initial Order provides that, "Any defendant who has not been served with a summons and complaint within 120 days after the filing of the complaint *may be dismissed without further order of the court unless* prior to such time the party on whose behalf such service is required shows good cause why service has not been perfected."  *See* doc. 4 at 6.  Plaintiff does not dispute that he served Payne late; instead he contends that he was unable to initially locate Payne because Payne no longer works at Wal-Mart and neither Plaintiff nor Defendants knew Payne's address. Doc. 23 at 5-6.  After searching north Alabama and southern Tennessee and hiring a skip-trace investigator, Plaintiff finally located and served Payne.  Thus, having shown good cause as to why he did not perfect service within 120 days, Payne's motion to dismiss is **DENIED**.

a summary judgment motion, the parties must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c). Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a

summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.  <u>FACTUAL BACKGROUND</u>[3]

On April 4, 2009, Plaintiff purchased a 22-inch push lawnmower from Wal-Mart.  Doc. 21-1 at 15, 56.  After assembling the lawnmower and filling it with gas and oil, the lawnmower "locked up" and failed to start.  Consequently, Plaintiff repackaged the lawnmower and returned to Wal-Mart.  *Id.* at 16-17.  When Plaintiff arrived at Wal-Mart, Plaintiff left the lawnmower in the trunk, walked inside the store, and "was going inside to get . . . a cart and get someone to help [him] to come back outside and take [the lawnmower] inside to get that little sticker put on it and get . . . another lawnmower." *Id*. at 17.  Plaintiff approached a Wal-Mart employee and told her that he wanted to return the lawnmower because "[i]t's a piece of junk" and that he needed someone to help him bring it in.  *Id.*  When the

---

[3] When evaluating the motion for summary judgment, the court resolves all factual disputes in Plaintiff's favor "when sufficient, competent evidence . . . supports Plaintiff's version of the disputed facts."  *See Pace v. Capobianco*, 283 F.3d 1275, 1276 (11th Cir. 2002).

employee informed Plaintiff he could not bring a lawnmower containing gas and oil inside the store, Plaintiff refused to empty the oil and gas. *Id*. Consequently, the employee informed Plaintiff that she would not exchange the lawnmower. *Id*. Not liking the answer, Plaintiff stated, "[w]ell, I'm fixing to go in there and exchange it myself . . . . I don't need you to help me exchange this." *Id*. To no surprise, the employee warned Plaintiff that if he went "back there and [got a lawnmower] . . . . [she would] call the police and have [Plaintiff] arrested for theft." *Id*.

Despite the warning, for reasons that made perfect sense only to Plaintiff, Plaintiff placed a new lawnmower in his cart and headed towards the exit. *Id*. When the employee threatened to call the police again, Plaintiff replied, "you better call the police . . . because you're not going to stop me." *Id*. at 18. With that proclamation of his intent, Plaintiff exited the store, walked to his car, removed the old lawnmower from the trunk, and placed the new lawnmower in his trunk. *Id*. Shortly thereafter, and, as any rational person would expect, Payne and Mulack, Wal-Mart Asset Protection Coordinators, approached Plaintiff in the parking lot. Doc. 21-2 at 2; doc. 21-3 at 2. Payne stated, "I am not letting you leave with that lawnmower." Doc. 20-1 at 20. While Plaintiff was in the process of telling Payne "[y]ou can go fuck yourself," – after all, in Plaintiff's mind, he was within his right

5

to take the new lawnmower – Officer Constable pulled up and exited his patrol car. *Id.* at 21.  Allegedly, Officer Constable stood there with his hand on the tazer "forever," *id*, which, apparently, further aggravated Plaintiff.  Consequently, to force Officer Constable to act, Plaintiff threw his hands in the air and stated "Hey, come on over here.  I'm not refusing you sir." *Id*.  Perhaps because of Plaintiff's invitation – or, more likely, because Plaintiff had stolen a lawnmower – Officer Constable placed Plaintiff under arrest and handcuffed him.[4]  *Id*.

Perhaps in an effort to further aggravate Plaintiff, apparently after placing Plaintiff in Payne's custody, Officer Constable and Payne "communicated with bodily language, with this gibberish stuff." *Id*.  In any event, Officer Constable asserts that he intended to place Plaintiff in his patrol car, but Plaintiff said "no." Doc. 20-2 at 7. To avoid a possible struggle, Officer Constable decided to take Plaintiff by foot to Wal-Mart's security office in the rear of the store.  *Id.* However, since Officer Constable's patrol car was blocking traffic, Officer Constable directed Payne and Mulack to escort Plaintiff to the security office so that Officer Constable could move his car.  *Id.*  Allegedly, while Payne and Mulack were taking Plaintiff to the security office, Payne shoved Plaintiff, took him by his

---

[4]Officer Constable is a defendant in this case because Plaintiff contends that Officer Constable placed Plaintiff in "Payne's custody" rather than keeping Plaintiff in his custody.  Doc. 20-1 at 22.

right arm, and walked him about fifteen feet into Wal-Mart's garden center.  Doc.

21-1 at 22.  Once inside, Plaintiff contends that Payne "jumped in around behind

[him] and got down and was looking at them cuffs, running his hands over the

cuffs . . . . [then Payne] comes up to [Plaintiff's] left side of [his] ear and [Payne]

screams . . . and demands that [Plaintiff] tell him what [Plaintiff's] problem is."  *Id.*

at 23.  Next, Payne allegedly "jerked the crap" out of Plaintiff's arm, shoved his

body into a pole, and tried to "pop [Plaintiff's] cranium," before proceeding to grab

Plaintiff by the seat of his pants and pitching him "like a sack of potatoes across the

floor."  *Id.* at 23-24.  Allegedly, after Plaintiff hit the floor, Payne came "down on

[him], burying both of his elbows in [Plaintiff's] shoulder . . . and [Payne]

screamed at [Plaintiff] again."  *Id*. at 24.

To no surprise, Payne offers a different version.  Allegedly, while walking

Plaintiff through the garden center, Plaintiff refused to be compliant and kept

trying to walk backwards.  Doc. 21-2 at 3.  Plaintiff then allegedly "started jumping

around, trying to push back against [Payne].  [Payne] pushed back against

[Plaintiff] and [they] both went to the ground."  Doc. 21-2 at 4.

Officer Constable was outside during the confrontation.  As soon as he

placed his car in gear to move it behind Wal-Mart, someone ran to him and

reported that the security officers were having trouble with Plaintiff and that they

7

needed Officer Constable's help.   Doc. 20-2 at 7.  As a result, Officer Constable

ran to the garden center and helped Payne to get Plaintiff off the ground.  *Id*.  Payne

then escorted Plaintiff to the security office where another Athens police officer

took custody of Plaintiff, while Officer Constable stayed at Wal-Mart to complete

an accident investigation report for an incident that occurred earlier in the day.

Doc. 20-2 at 7; doc. 21-1 at 25-27.  For exercising his own self-appointed right to

make an "exchange" in a manner that he deemed appropriate, Plaintiff was charged

with and convicted of third degree theft of property.   Doc. 21-1 at 32; doc. 20-1 at

117; doc. 21-1 at 142.

### III.  ANALYSIS

Plaintiff raises six claims against Defendants.  Doc. 1.  In Counts I-III,

Plaintiff alleges that Officer Constable and the City violated his Fourth and

Fourteenth Amendment rights by: (1) subjecting him to excessive and unreasonable

force (Count I); (2) falsely charging him with third degree theft and falsely

arresting and imprisoning Plaintiff (Count II); and (3) denying him due process

rights (Count III).  Doc. 1-1 at 1-5.  Additionally, Plaintiff alleges state law claims

of assault and battery (Count IV), false arrest and imprisonment (Count V), and

negligence (Count VI) against all Defendants.  *Id.* at 5-7.  The court will address

first Plaintiff's federal claims against Officer Constable and the City in subsection

A and then the state claims against all Defendants in subsection B.  For the reasons discussed below, the court finds that summary judgment is due to be **GRANTED** on all claims against Officer Constable, the City, and Mulack.  Summary judgment is **GRANTED**, in part, and **DENIED**, in part on Plaintiff's claims against Wal-Mart and Payne.

## A.    Federal Claims

The court will address separately Plaintiff's federal claims against the City and Constable.

### 1.    Municipal Liability

Section § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." 42 U.S.C. § 1983.  While Section 1983 applies to municipalities, however, a plaintiff cannot rely on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978); *see also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993).  In other words, a municipality is responsible for its own acts but not those of its employees.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-79

(1986).  Thus, a municipality is liable under section 1983 only "when execution of a government's policy or custom . . . inflicts the injury." *Monell*, 436 U.S. at 694. "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (citations and quotation marks omitted).  "A custom is a practice that is so settled and permanent that it takes on the force of law." *Id.* (citations and quotation marks omitted).  "In order for a plaintiff to demonstrate a policy or custom, it is generally necessary to show a persistent and wide-spread practice." *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004) (citations and quotation marks omitted). Therefore, to establish section 1983 liability against a municipality the plaintiff must show that the individual carried out the alleged actions pursuant to either (1) a policy, ordinance, regulation or decision officially adopted and promulgated by the municipal's duly-authorized policymakers; or (2) a custom even though such a custom has not received formal approval through the municipal's official-decision making channels. *Monell*, 436 U.S. at 690-91.  In this case, Plaintiff failed to allege any facts that suggest that Officer Constable acted pursuant to either the City's policy or custom. *See* doc. 1-1.  Additionally, Plaintiff failed to address the City's liability in his response to the motion for summary judgment. *See* doc. 24-1.

In other words, Plaintiff abandoned his claims against the city.  *Milledge v. Rayonier, Inc.*, 192 F. App'x 859, 860 (11th Cir. 2006); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001).  Accordingly, the City's motion for summary judgment with respect to Counts I, II, and III is **GRANTED**.

### 2.    Individual Claims: Count I – Federal Excessive Force Claim

Plaintiff alleges that Officer Constable subjected him to excessive and unreasonable force when Officer Constable "handcuffed the hands of Plaintiff behind his back and then released the Plaintiff to a third party, private citizen." Doc. 1-1 at 4.  Stated differently, Plaintiff alleges that the Wal-Mart employees could not have subjected him to excessive force if Officer Constable "had not handcuffed him and turned him over to Payne and Mulack, Wal-Mart employees." Doc. 24-1 at 4.  Officer Constable contends that he is due to prevail because (1) the Wal-Mart "security video completely belies [Plaintiff's] testimony that the security personnel administered a beating in the garden center;" (2) he did not have a duty nor was there a need to intervene; and (3) that he is entitled to qualified immunity. Doc. 19.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would

have known.'"  *Pearson v. Callahan*, 129 S. Ct. 808, 815 (U.S. 2009) (quoting

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity balances

two important interests – the need to hold public officials accountable when they

exercise power irresponsibly and the need to shield officials from harassment,

distraction, and liability when they perform their duties reasonably."  *Pearson*, 129

S. Ct. at 815.  "Because qualified immunity is 'an immunity from suit rather than a

mere defense to liability . . . it is effectively lost if a case is erroneously permitted

to go to trial.'"  *Id*. (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

  To qualify for qualified immunity, Officer Constable must show initially that

he was engaged in a discretionary duty during the event in question.  *See Hadley v.*

*Gutierrez*, 526 F.3d 1324, 1329 (11th Cir. 2008).  Because Plaintiff does not

dispute this fact, the burden shifts to Plaintiff to show that Officer Constable is not

entitled to qualified immunity.  *Id*.  In *Saucier v. Katz*, the Supreme Court

mandated a two-step sequence for addressing qualified immunity claims: (1) the

court first decides whether the facts alleged or shown by a plaintiff make out a

violation of a constitutional right, and (2) the court then decides whether the right

was "clearly established" at the time of the alleged violation.  533 U.S. 194, 201

(2001).  In *Pearson*, however, the Court held that courts need not adhere to

*Saucier*'s rigid two-step inquiry, and that courts can decide the second question

without reaching the first.  129 S. Ct. at 818.  This court will conduct the two-step

inquiry in analyzing Officer Constable's qualified immunity defense.

### a.   Officer Constable Did Not Violate Plaintiff's Constitutional Right

"In an excessive force case arising out of an arrest, whether a constitutional

violation occurred is governed by the Fourth Amendment's 'objective

reasonableness' standard."  *Hadley*, 526 F.3d at 1329 (citations omitted); *see also*

*Graham v. Connor,* 490 U.S. 386, 394-95 (1989).  The question is whether the

"officer's conduct is objectively reasonable in light of the facts confronting the

officer."  *Vinyard v. Wilson,* 311 F.3d 1340, 1347 (11th Cir. 2002); *see also*

*Graham*, 490 U.S. at 396-97.  "[T]he determination of whether the manner of arrest

was reasonable must be judged on a case-by-case basis from the perspective of a

reasonable officer on the scene, rather than with the 20/20 vision of hindsight."

*Webster v. Beary*, 228 F. App'x. 844, 849 (11th Cir. 2007) (internal quotations

omitted).  Furthermore, "a court must carefully balance the nature and quality of

the intrusion on the individual's Fourth Amendment interests against the

countervailing governmental interests."  *Fils v. City of Aventura*, 647 F.3d 1272,

1288 (11th Cir. 2011) (quoting *Graham*, 490 U.S. at 396).  The Eleventh Circuit

considers several factors to determine "whether an officer's use of force was

objectively reasonable, including '(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted, and (4) whether the force was applied in good faith or maliciously and sadistically.'" *Id.* (quoting *Slicker v. Jackson*, 215 F.3d 1225, 1233 (11th Cir. 2000)). Thus, "[a]t the summary judgment stage, . . . once we have determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record,* the reasonableness of [the officer's] actions . . . is a pure question of law." *Penley*, 605 F.3d at 848-49 (quoting *Scott v. Harris,* 550 U.S. 372, 381 n.8 (2007) (citations omitted and emphasis in original)).

    This court must first decide whether the facts in the light most favorable to Plaintiff support an excessive force claim. *Saucier,* 533 U.S. at 201. In that regard, Plaintiff admits that he removed a lawnmower from Wal-Mart without paying for it and told the store attendant "you better call the police . . . because you are not going to stop me." Doc. 21-1 at 17-18. Plaintiff then loaded the lawnmower into his trunk at a deliberate pace purportedly to allow for the "police to come out there like the [store attendant] told him" they would. *Id.* Additionally, once Officer Constable arrived, Plaintiff threw his hands in the air and stated, "I'm not refusing you, sir," and Officer Constable proceeded to arrest Plaintiff. *Id.* Notably, Plaintiff testified that Officer Constable "never hurt [him]." Doc. 21-1 at 63. Thus, Plaintiff

does not attack Officer's Constable's actions as it relates to the arrest.

However, Plaintiff asserts that Officer Constable is liable for excessive force because "he turned [Plaintiff] over to another -- to an individual who was not a police officer" and, who, in turn, attacked Plaintiff. *Id.* Specifically, Plaintiff contends that Officer Constable had a chance to intervene when he saw the confrontation, but instead simply helped Plaintiff off the ground and returned Plaintiff to Payne's custody. Doc. 24-1 at 5. Plaintiff asserts that "this is not a case where Constable [saw] another officer or third party using excessive force but is a case where Constable put [Plaintiff] in a situation that he should not have been put in." Doc. 24-1 at 5. Therefore, as it relates to this matter, the only issues before the court are whether Officer Constable acted reasonably when he released Plaintiff to Payne's custody and when he purportedly failed to intervene during the alleged attack.

Officer Constable's reasonableness in allowing Payne to escort Plaintiff to the security office "must be judged on a case-by-case basis from the perspective of a reasonable officer on the scene." *Webster*, 228 F. App'x at 849. The court finds that Officer Constable acted reasonably for several reasons. First, when Officer Constable arrived at the scene, he parked his patrol car in the lane of traffic in front the store. After handcuffing Plaintiff, Officer Constable directed Payne to escort

15

Plaintiff through the store so that Officer Constable could move his patrol car to the back of the store.  Doc. 20-2 at 7.  Moreover, Officer Constable felt escorting Plaintiff through the store was the better option since Plaintiff refused to enter the back of the patrol car and Officer Constable did not want to use force to place Plaintiff in the car.  *Id.* Second, turning Plaintiff over to Payne was also reasonable because another Athens police officer was already in the security office to take custody of Plaintiff.  *Id.*  Third, Officer Constable asked Payne to escort Plaintiff through the store, *id.*, – a public area with many patrons – and thus never really left Plaintiff "alone" or in any danger.  Based on these facts, Plaintiff failed to establish that Officer Constable acted unreasonably when he made the initial decision to turn Plaintiff over to Payne and Mulack.

Additionally, Plaintiff contends that Officer Constable is liable for excessive force because he did not intervene when Payne allegedly attacked Plaintiff and cites to *Matheny v. Boatright*, 970 F. Supp. 1039, 1043 (S.D. Ga. 1997), to support his contention that Officer Constable is liable for excessive force.  Doc. 24-1 at 5. The *Matheny* court held that "the state has an affirmative duty to protect an individual's liberty interests whenever it restrain[s] the individual's freedom to act on his own behalf - through incarceration, institutionalization or *other similar restraint of liberty* . . . . Once police officers take custody of an individual, an

16

affirmative duty arises to protect his or her liberty interests."  970 F. Supp. at 1043

(internal quotation marks and citations omitted) (emphasis in original).   However,

Plaintiff's reliance on *Matheny* ignores that, generally, a police officer is only

liable under section 1983 for another officer's excessive force "[i]f a police officer,

whether supervisory or not, fails or refuses to intervene when a constitutional

violation such as an unprovoked beating takes place in his presence." *Byrd v.*

*Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *see also Post v. City of Fort*

*Lauderdale*, 7 F.3d 1552, 1560 (11th Cir. 1009) ("A police officer has a duty to

intervene when another officer uses excessive force.").   In contrast, here, Payne

worked for Wal-Mart and was not a public official.   Like any other private citizen

committing a crime, a police officer "has no affirmative constitutional duty to a

member of the public to . . . intervene on an alleged crime."   *Hall v. Santa Rosa*

*C.I., et al.*, No. 3:06-cv-351, 2007 WL 474370 (N.D. Fla. Feb. 9, 2007) (citing

*Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985)).   Moreover, the alleged

assault occurred outside of Officer Constable's presence.   Indeed, as Plaintiff

acknowledges "this is not a case where Constable sees another officer or third party

using excessive force."   Doc. 24-1.   In other words, even if a duty existed, it is

unreasonable to expect Officer Constable to intervene when a duty only arises "if

circumstances were such that intervention was possible." *Eggleton v. Jackson*, No.

09-cv-81292, 2011 WL 1988518 at *6 (S.D. Fla. May 2, 2011).    Furthermore,

"[b]ecause [Officer Constable] had no reason to expect the use of excessive force

until after it had occurred, he had no reasonable opportunity to protect [Plaintiff

from the alleged attack], and the obligation to take steps to protect him never

arose." *Riley v. Newton*, 94 F.3d 632, 635 (11th Cir. 1996).

Perhaps recognizing that he cannot hold Officer Constable liable for conduct

Officer Constable did not witness, Plaintiff further contends that even after Officer

Constable witnessed the confrontation he simply helped Plaintiff off the floor and

returned Plaintiff to Payne.  Doc. 24-1. Again, Officer Constable did not witness

the incident between Plaintiff and Payne.  Moreover, before Officer Constable had

a chance to move his car, someone ran up to him to report that Payne and other

Wal-Mart employees were having problems with Plaintiff and needed Officer

Constable's help.  Doc. 20-2 at 7.  Thus, it was reasonable in such a situation for

Officer Constable to think that Plaintiff was uncooperative.  Additionally, Officer

Constable's patrol car was still blocking traffic and since he had no indication that

Payne actually attacked Plaintiff, a fact Payne denies, he acted reasonably in

allowing Payne to continue escorting Plaintiff to the other Athens police officer

waiting in the security office. In short, Officer Constable had no duty to intervene

and never violated Plaintiff's constitutional rights.  Therefore, Officer Constable is

entitled to qualified immunity on Plaintiff's excessive force claim.[5]

### 3.      **Count Two – False Arrest and False Imprisonment**

Plaintiff challenges next Officer Constable's decision to arrest him.  The law is well settled that "[a] warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim." *Kingsland v. City of Miami*, 382 F.3d 1220, 1226 (11th Cir. 2004) (citing *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990)); *see also Skop v. City of Atlanta*, 485 F.3d 1130, 1143 (11th Cir. 2007) ("an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures."). "In Fourth Amendment terminology, an arrest is a seizure of the person . . . and the reasonableness of an arrest is, in turn, determined by the presence or absence of probable cause for the arrest." *Skop*, 485 F.3d at 1137 (citation omitted).  "Probable

---

[5]For the same reasons, summary judgment is also due on Plaintiff's due process violation claim (Count III). Plaintiff alleges that "Constable subjected Plaintiff to the denial of his due process rights . . . when he handcuffed the hands of Plaintiff behind his back and then released the Plaintiff to a third party private citizen.  Plaintiff's due process rights include being protected from third party injuries after being arrested and . . . handcuffed . . . . " Doc. 1-1 at 5. "Only the most egregious official conduct" rises to the sort of "'abusive executive action' that can be sufficiently arbitrary for constitutional recognition as a potentially viable substantive due process claim." *Carr v. Tatangelo*, 338 F.3d 1259, 1271 (11th Cir. 2003).  As stated thoroughly in the court's analysis of Plaintiff's Federal Excessive Force Claim, Officer Constable acted reasonably when he allowed Payne and Mulack to transport Plaintiff from the parking lot to the back of the store.  Therefore, the court finds that Officer Constable's behavior was not "egregious official conduct" that rises to a due process claim.  Additionally, the claim fails also because Plaintiff abandoned it by failing to address Defendants' arguments. *See* doc. 24-1; *Milledge*, 192 F. App'x at 860; *Wilkerson*, 270 F.3d at 1322.  Accordingly, Officer Constable and the City's motion for summary judgment is also **GRANTED** with respect to Plaintiff's due process claim.

cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009) (quotation marks and citation omitted).  If an officer had probable cause or even arguable probable cause for the arrest, the officer is entitled to qualified immunity.  *See Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) ("Qualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist.").  Arguable probable cause exists "where reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest the plaintiff." *Davis v. Williams*, 451 F.3d 759, 762-63 (11th Cir. 2006) (quotation marks and citation omitted).

To determine whether arguable probable cause exists, the court considers the totality of the circumstances and asks "'whether the officer's actions are objectively reasonable . . . regardless of the officer's underlying intent or motivation.'" *Vaughan v. Cox*, 264 F.3d 1027, 1036 (11th Cir. 2001) (quoting *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997)).  "Arguable probable cause does not require an arresting officer to prove every element of a crime or to obtain a confession before making an arrest, which would negate the concept of probable cause and transform

arresting officers into prosecutors." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir.

2002) (quotation marks and citation omitted). *See also Crosby*, 394 F.3d at 1332

("Arguable probable cause exists if, under all of the facts and circumstances, an

officer reasonably could – not necessarily would – have believed that probable

cause was present."). Thus, qualified immunity protects even those officers who

"reasonably but mistakenly conclude that probable cause is present." *Montoute*,

114 F.3d at 184 (quotation marks and citation omitted).

      Turning to the facts here, Plaintiff contends that no probable cause existed to

arrest him because "[l]eaving the store without paying for the merchandise may be

enough for probable cause but not when they know of other facts that would negate

probable cause." Doc. 24-1 at 6. Allegedly, Defendants "had evidence that the

Plaintiff was [at Wal-Mart] to exchange a faulty product and this was not a theft

but a misunderstanding." *Id.* Therefore, with this knowledge, Officer Constable's

decision to arrest Plaintiff was purportedly without probable cause. To support his

contention Plaintiff relies on *Trujillo v. Florida Agency for Health Care Admin.*,

405 F. App'x 461, 463-64 (11th Cir. 2010), in which the Eleventh Circuit stated

that police officers

> should not be permitted to turn a blind eye to exculpatory information
> that is available to them and instead support their actions on selected
> facts they chose to focus upon . . . . [A] police officer is not required

to explore and eliminate every theoretically plausible claim of
innocence before making an arrest . . . but an officer may not conduct
an investigation in a biased fashion or elect not to obtain easily
discoverable facts.

(internal quotations and citations omitted) (citing *Kingsland v. City of Miami*, 382

F.3d 1220, 1228 (11th Cir. 2004)).

The court disagrees with Plaintiff and finds that the *Trujillo* holding has no

application here.  Apparently, Plaintiff advocates for a society with no rules and

laws – one in which an individual can walk to a store, claim to be there to return

merchandise which is not in his possession, refuse to follow the established

procedures for doing so, tell the store they can call the police, walk out with the

merchandise without paying for it, and then expect no repercussions.  While

perhaps this incident is only a "misunderstanding" in Plaintiff's own tiny kingdom

where individuals can reject all laws and rules, in the rest of the free world where

common sense prevails, Plaintiff's conduct constituted theft.

Indeed, Wal-Mart called the police and the City dispatched Officer

Constable.  When Officer Constable arrived, he saw Payne and other Wal-Mart

employees questioning Plaintiff.  Doc. 20-2 at 6-7. Moreover, Officer Constable

contends Plaintiff said something to the extent of "[t]hey said I stole a lawnmower,

so I guess I did." *Id*.  Additionally, Plaintiff admitted that he threw his hands in the

22

air and said "[h]ey, come on over here.  I'm not refusing you, sir."  Doc.  21-1 at

21.  More importantly, the new lawnmower which Plaintiff "guess[ed] [he] did

steal" was clearly visible from Plaintiff's trunk and Plaintiff still had possession of

the old lawnmower.  Basic common sense dictates that an individual outside a store

with both the new and old merchandise has not engaged in a return or exchange of

a purportedly defective item.  In fact, to the vast majority of observers the

individual has stolen the merchandise in question.  Significantly, the idea that

consumers must follow proper procedures to return merchandise is not a novel

concept.  In fact, Plaintiff returned items to Wal-Mart previously, doc. 21-1 at 16,

and, thus, clearly knew the required protocol.  In other words, Plaintiff simply

cannot claim credibly that his conduct constituted "not a theft but a

misunderstanding."  Doc. 24-1 at 6.

Needless to say, under these facts, it was reasonable for Officer Constable to

assume, with the information relayed to him by dispatch, that Plaintiff stole a

lawnmower.  Indeed, Plaintiff was convicted subsequently of third degree theft of

property.  Doc. 21-1 at 34; doc. 21-2 at 18.  Based on these facts, contrary to

Plaintiff's contention that Officer Constable turned a "blind eye" to the actual facts,

Officer Constable actually viewed the facts presented to him with wide open eyes

and properly arrested Plaintiff.  Put differently, Officer Constable had "facts and

circumstances within [his] knowledge sufficient to warrant a reasonable belief" that Plaintiff stole the lawnmower.  *Case*, 555 F.3d at 1327 (11th Cir. 2009).  Accordingly, the court **GRANTS** the motion for summary judgment on Plaintiff's false arrest and false imprisonment claim.

## B.   State Claims

In addition to the claims under federal law, Plaintiff also filed state law claims for assault and battery (Count IV), false arrest and imprisonment (Count V), and negligence (Count VI), against all Defendants.  As shown below, Plaintiff's state law claims against Officer Constable, the City, Mulack and Wal-Mart, for the alleged conduct of Mulack, and the false arrest and false imprisonment claim against Payne, fail.  However, Plaintiff's claims against Payne for assault and battery and negligence and the claim against Wal-Mart for the alleged assault and battery by Payne survive summary judgment.

### 1.   Officer Constable's and the City's Liability

#### a.   Officer Constable's Liability.

Officer Constable contends that he is entitled to state-agent immunity on Plaintiff's state law claims because he was performing discretionary functions.  Doc. 19 at 20-22.  Municipal police officers have immunity from any "tort liability arising out of [their] conduct in the performance of any discretionary function

24

within the line and scope of [their] law enforcement duties." ALA. CODE § 6-5-338(a).  However, as the Supreme Court of Alabama has explained, "[p]eace officers are not entitled to absolute immunity under § 6-5-338(a); rather, immunity from tort liability under § 6-5-338(a) 'is withheld if an officer acts with willful or malicious intent or in bad faith.'" *Ex parte City of Tuskegee*, 932 So. 2d 895, 906-07 (Ala. 2005) (quotation omitted).

Again, Plaintiff is suing Officer Constable for the conduct of Wal-Mart employees.  According to Plaintiff, Officer Constable "never hurt [him] except when he turned [Plaintiff] over to another -- to an individual who wasn't a police officer."  Doc. 21-1 at 63.  However, Plaintiff never alleged additional facts to establish that Officer Constable acted with willful or malicious intent or in bad faith when Officer Constable arrested Plaintiff and allowed Payne to escort Plaintiff to the office.  Moreover, Plaintiff does not dispute Office Constable's testimony that he allowed Payne to escort Plaintiff so that Officer Constable could move his patrol car from the traffic lane.  In short, Plaintiff failed to allege any action by Officer Constable that showed a malicious intent to harm Plaintiff.  Accordingly, Officer Constable's motion for summary judgment on Plaintiff's state law claims is **GRANTED**.

### b.    Municipal Liability

Plaintiff alleges in Count VI a negligent hiring, training, and supervision claim against the City.  Allegedly, as related to the City, "Constable . . . w[as] negligent in . . . [his] performance of . . . [his] job[] and [the City] . . . w[as] negligent in the hiring, training, and supervising [of Constable]."[6]  Doc 1-1.  The relevant state law for municipal liability provides that: "No city or town shall be liable for damages for injury done to or wrong suffered by any person or corporation, unless such injury or wrong was done or suffered through the neglect, carelessness, or unskillfulness of some agent, officer, or employee of the municipality engaged in work therefor and while acting in the line of his or her duty . . . ."  ALA. CODE § 11-47-190 (1975).  Thus, "under § 11-47-190, a city is liable for negligent acts of its employees within the scope of their employment, but not intentional torts of its employees." *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 743 (11th Cir. 2010).  Furthermore, a city is not liable for willful, reckless, or wanton acts of its employees. *See Altmayer v. City of Daphne*, 613 So. 2d 366, 369 (Ala. 1993) (holding that § 11-47-190 "absolves a municipality from liability from

---

[6]Counts IV and V contain Officer Constable's alleged negligent conduct for which Plaintiff seeks to hold the City liable in Count VI.  Doc. 1-1 at 5-6.  Allegedly, "Constable aided and abetted the assault and battery committed by Payne and Mulack . . . by handcuffing the Plaintiff's hands behind his back and releasing the Plaintiff to Payne and Mulack," and "[a]t Constable's, Payne's and Mulack's insistence, Plaintiff was falsely charged with third degree assault, falsely imprisoned, and haled into court to face judicial proceedings." *Id.*

26

the intentional torts of its agents," and also affirming trial court's determination

that § 11-47-190 barred plaintiffs' willful and reckless misrepresentation claim);

*Hilliard v. City of Huntsville*, 585 So. 2d 889, 892 (Ala. 1991) (holding that § 11-

47-190 does not include an action for wanton conduct).

In other words, to prevail against a municipality, a plaintiff must show that

the officer's conduct was not intentional.  Put differently, to hold the City liable,

Plaintiff must show that (1) Officer Constable acted within the scope of his

employment and that (2) his actions were negligent, careless, or unskillful.  *Brown*,

608 F.3d at 743.  Only the second element is at issue here.  Although Plaintiff's

complaint alleges that Officer Constable's conduct was "undertaken under such

circumstances as to imply malice and, in fact was malicious," doc. 1-1 at 6,

Plaintiff failed to present facts to support his contention.  Moreover, Plaintiff failed

to allege any facts to support his contention that the City acted negligently in the

hiring, training, and supervision of Officer Constable.  *See* doc. 24-1.  In fact,

Plaintiff failed to address the City's liability in his response to the motion for

summary judgment and, consequently, has abandoned this claim.  *Milledge*, 192 F.

App'x at 860; *Wilkerson*, 270 F.3d at 1322.  Furthermore, in light of the court's

finding that Officer Constable acted reasonably when he handcuffed Plaintiff and

allowed Payne to escort Plaintiff to the security office, Plaintiff cannot establish

that Officer Constable's behavior was negligent, careless, or unskillful.  Finally, "[i]t is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then, pursuant to § 6-5-338(b), the city by which he is employed is also immune." *Ex Parte Dixon*, 55 So. 3d 1171, 1179 (Ala. 2010).  Therefore, the City's motion for summary judgment on Plaintiff's state law claims against the City is also **GRANTED**.

> **2.     Wal-Mart's, Mulack's and Payne's Liability**

>> **a.     Count IV – Assault and Battery**

In Count IV, Plaintiff asserts a claim for assault and battery against Payne, Mulack, and Wal-Mart.  Doc. 1-1 at 5.  However, Plaintiff has made clear that he is *not* pursuing a claim against Mulack for assault and battery:

Q: Do you make any claim against Kevin Mulack?

A: No.

Q: Do you say that Kevin Mulack did anything wrong?

A. No.  Kevin Mulack and me have no -- as far as I'm concerned, I have no -- the man never touched me.

Q. You are not making any claim today against Kevin Mulack?

A. Never have.

Q. The only Wal-Mart person you say touched you or beat you is Will Payne?

A. Right.

Doc. 21-1 at 64.  Therefore, summary judgment is **GRANTED** in favor of Mulack on the assault and battery claim.  Likewise, summary judgment is **GRANTED** on any claim against Wal-Mart that is premised on Mulack's alleged actions.

As it relates to Payne's conduct, Alabama law requires a plaintiff alleging "assault and battery" to prove "(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." *Harper v. Winston Cnty.*, 892 So. 2d 346, 353 (Ala. 2004) (quoting *Ex parte Atmore Cnty. Hosp.*, 719 So. 2d 1190, 1193 (Ala. 1998)).  "The wrong here consists, not in the touching, so much as in the manner or spirit in which it is done . . . . Thus, to lay hands on another in a hostile manner is a battery, although no damage follows; but to touch another, merely to attract his attention, is no battery and not unlawful."  *Harper*, 892 So. 2d at 353-54 (quotations marks and citations omitted).  Moreover, Plaintiff can only hold Wal-Mart liable for Payne's acts under the doctrine of respondeat superior. "In order to recover against a defendant under the doctrine of respondeat superior, the plaintiff must establish the status of master and servant and that the act done

was within the line and scope of the servant's employment."  *Meyer v. Wal-Mart Stores, Inc.*, 813 So. 2d 832, 834 (Ala. 2001) (citing *Naber v. McCrory & Sumwalt Construction Company,* 393 So. 2d 973 (Ala. 1981)). "This rule applies even where the wrong complained of was intentionally, willfully, or maliciously done in such a manner as to authorize a recovery for punitive damages."  *Meyer,* 813 So. 2d at 834 *(*citing *Anderson v. Tadlock,* 175 So. 412 (1937)).  An employer can only defeat liability of an employee's willful acts if "it can be shown that the servant acted from wholly personal motives having no relation to the business of the master."  *Meyer*, 813 So. 2d at 834.  Therefore, Plaintiff can only recover against Wal-Mart by establishing that Payne's alleged conduct was within the line and scope of Payne's employment.  *See Meyer,* 813 So. 2d at 834.

It is undisputed that Payne was on duty as a Wal-Mart security officer at the time of the alleged assault.  Docs. 19 at 6, 20-2 at 7, 25-1 at 2.  However, there are material disputed facts as to whether Payne intentionally shoved Plaintiff and threw him onto the floor, doc. 21-1 at 22, as Plaintiff alleges, or whether Plaintiff tried to "break free from [Payne]," and then lost his balance and fell to the floor, Doc. 19 at 11 (Defendants' interpretation of the surveillance video).  This is simply an issue the court cannot resolve without credibility determinations which is, of course, the province of the jury.  Likewise, whether Payne acted solely for

personal motives or for the interests of Wal-Mart is also a question for the jury.

*Meyer,* 813 So. 2d at 835 (citing *B.F. Goodrich Tire Company v. Lyster,* 328 F.2d

411 (5th Cir.1964)).   In other words, a determination of Payne's liability for the

alleged conduct is a necessary prerequisite before the court can reach Wal-Mart's

liability.   Accordingly, as it relates to Payne's liability and Wal-Mart's liability for

the alleged assault and battery by Payne, Payne's and Wal-Mart's motions for

summary judgment are **DENIED**.

### b.     Count V – False Arrest and False Imprisonment

In Count V, Plaintiff asserts a claim for false arrest and imprisonment

against Payne, Mulack, and Wal-Mart.   Doc. 1-1 at 6.   Wal-Mart, Mulack, and

Payne have moved for summary judgment contending that they are immune from

liability pursuant to 15-10-14(a), which provides:

> A peace officer, a merchant or a merchant's employee who has
> *probable cause* for believing that goods held for sale by the merchant
> have been unlawfully taken by a person and that he can recover them
> by taking the person into custody may, for the purpose of attempting
> to effect such recovery, take the person into custody and detain him in
> a reasonable manner for a reasonable length of time.   Such taking into
> custody and detention by a peace officer, merchant or merchant's
> employee shall not render such police officer, merchant or merchant's
> employee criminally or civilly liable for false arrest, false
> imprisonment or unlawful detention.

ALA. CODE § 15-10-14 (1975) (emphasis added).   Moreover, "[p]robable cause is

defined as such a state of facts in the mind of the prosecutor as would lead a man of ordinary caution and prudence to believe or entertain an honest or strong suspicion that the person arrested is guilty." *Ezell v. Southland Corp*., 541 So. 2d 490, 491 (Ala. 1989) (internal quotations omitted).

Probable cause exists here based on Plaintiff's own description of his conduct.  Specifically, Plaintiff admitted that after a Wal-Mart employee informed Plaintiff that he could not return the broken lawnmower with gas and oil in it, Plaintiff decided nonetheless to remove a new lawnmower from the shelf and to exit the store without paying for it.  Doc. 21-1 at 17-18.  Incredibly, Plaintiff told the Wal-Mart employee she "better call the police . . . because [she was not] going to stop [him]" from taking the lawnmower.  *Id.* at 18.  Plaintiff even admitted that he loaded the lawnmower deliberately into his car to give the police sufficient time to respond.  *Id*.  Moreover, a "stampede" of Wal-Mart employees, with Payne leading the group, approached Plaintiff to stop him from stealing the lawnmower prior to Officer Constable's arrival.  *Id.* at 19.  Thus, the undisputed facts support Wal-Mart, Mulack, and Payne's contention that Mulack and Payne had probable cause to believe that Plaintiff stole the lawnmower.  Consequently, Mulack and Payne cannot be liable for a false arrest especially since it was Officer Constable,

32

rather than Mulack and Payne, who arrested Plaintiff.[7]

In the final analysis, it is difficult for Plaintiff to contend that Wal-Mart, Mulack, and Payne falsely charged him with third degree theft, and falsely arrested and imprisoned him, when a court convicted Plaintiff of third degree theft of property.  Doc. 21-1 at 32-34.  Put differently, Wal-Mart, Mulack, and Payne cannot be guilty of a tort, when, in fact, a court found that Plaintiff engaged in the conduct in question.  Accordingly, as it relates to the false arrest and imprisonment claim, Payne, Mulack and Wal-Mart's motions for summary judgment are **GRANTED**.

### c.      Count VI – Negligence

Finally, Plaintiff contends that "Payne and Mulack were negligent in their performance of their job and Wal-Mart . . . [was] negligent in the[ir] hiring, training and supervisi[on] . . ."  Doc. 1-1.  Moreover, Plaintiff contends that his claim of negligent hiring should go forward because "the evidence shows that Wal-Mart had [a] policy of putting people in jail if they left the store without paying for the merchandise.  This is not the law and Wal-Mart should have trained

---

[7]Mulack's motion is also **GRANTED** because he simply walked along side Payne while Payne escorted Plaintiff to the security office, doc. 20-2 at 7, and, as Plaintiff testified, "the man never touched me," doc. 21-1 at 64.  In fact, Plaintiff failed to allege any facts in opposition to Mulack's motion or otherwise to support a claim against Mulack.

their employees that there must be probable cause to detain a customer." Doc. 25-1 at 6.  Furthermore, Plaintiff asserts that "[b]ecause the Plaintiff has refuted the prior claims of immunity and probable cause then the Defendants did owe a duty to the Plaintiff and therefore this claim of negligence can go forward." *Id*.  Wal-Mart, Mulack, and Payne disagree and contend that "Plaintiff cannot present substantial evidence to support a claim that the Defendants breached any duty owed to him which proximately caused him injury or damage." Doc. 22 at 14.

"The elements for recovery under a negligence theory are: (1) duty, (2) breach of duty, (3) proximate cause, and (4) injury." *Spain v. Brown & Williamson Tobacco Corp*. 872 So. 2d 101, 134 (Ala. 2003).  As previously stated, Plaintiff testified that he is not asserting a claim against Mulack.  Doc. 21-1 at 64. Therefore, Mulack's motion and Wal-Mart's motion for the alleged negligent conduct of Mulack is **GRANTED**.

Consequently, the only remaining issues are whether Payne acted negligently in his actions towards Plaintiff and whether Wal-Mart acted negligently in the hiring, training and supervision of Payne.  "In the master and servant relationship, the master is held responsible *for his servant's incompetency* when notice or knowledge, either actual or presumed, of such unfitness has been brought to him. Liability depends upon its being established by affirmative proof

34

that *such incompetency* was actually known by the master or that, had he exercised due and proper diligence, he would have learned that which would charge him in the law with such knowledge.  It is incumbent on the party charging negligence to show it by proper evidence."  *Lane v. Central Bank of Alabama, N.A.*, 425 So. 2d 1098, 1100 (Ala. 1983).  Moreover, "[a] party alleging negligent or wanton supervision and hiring must also prove the underlying wrongful conduct of employees."  *Voyager Ins. Companies v. Whitson*, 867 So.  2d 1065, 1073 (Ala. 2003).  As discussed in Subsection 2(a), *supra*, Payne was on duty as a Wal-Mart security officer at the time of the alleged assault.  Docs. 19 at 6; 20-2 at 7; 25-1 at 2.  However, the parties dispute whether Payne intentionally shoved Plaintiff and threw him onto the floor, doc. 21-1 at 22, as Plaintiff alleges, or whether Plaintiff tried to "break free from [Payne]," and then lost his balance and fell to the floor, Doc. 19 at 11 (Defendants' interpretation of the surveillance video).  Therefore, whether Payne had a duty and/or breached his duty to Plaintiff is in dispute and a matter which the court can only resolve at this juncture by making credibility determinations.  Making such determinations is, of course, improper at the summary judgment stage.  Accordingly, Payne's motion is **DENIED**.

However, Plaintiff failed to allege any facts that support his contention that Wal-Mart acted negligently in the hiring, training and supervising of Payne.  In

fact, Plaintiff failed to present any evidence at all to establish that Wal-Mart had any knowledge of Payne's prior bad acts or incompetency.  *See Lane*, 425 So. 2d at 1100.  In other words, Plaintiff has failed to meet his burden as it relates to Wal-Mart.  Therefore, Wal-Mart's motion for the negligence premised on the alleged conduct of Payne is **GRANTED**.

## IV.  <u>Conclusion</u>

In  sum, for the reasons stated above, this court **GRANTS** Officer Constable and the City's motion for summary judgment and **GRANTS** summary judgment for Mulack and for Wal-Mart on all claims based on alleged conduct by Mulack.  As it relates to Payne, the court **GRANTS** Payne's motion for the false arrest and false imprisonment claim (Count V) and **GRANTS** Wal-Mart's motion on this claim as well.  Finally, the court **GRANTS** Wal-Mart's motion on the negligent hiring, training, and supervision claim (Count VI).  In all other respects, the motions for summary judgment are **DENIED**.  Put differently, the claims remaining for trial are the negligence claim against Payne and the assault and battery claim against Payne and Wal-Mart.

**DONE** and ordered this 12th day of July, 2012.

_____

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE